**LITE DEPALMA GREENBERG, LLC**
Bruce D. Greenberg
570 Broad Street, Suite 1201
Newark, New Jersey 07102
Telephone: (973) 623-3000
Facsimile: (973) 623-0858
Email: bgreenberg@litedepalma.com

*Attorney for Plaintiff*

[Additional Counsel on signature page]

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| | : | |
| MELVIN GROSS, Individually and On Behalf of All Others Similarly Situated, | : | Civil Action No. |
| | : | |
| | : | |
| *Plaintiff*, | : | |
| v. | : | **CLASS ACTION COMPLAINT** |
| | : | |
| NAVIENT CORPORATION, JOHN F. REMONDI, SOMSAK CHIVAVIBUL, and CHRISTIAN M. LOWN, | : | **JURY TRIAL DEMANDED** |
| | : | |
| *Defendants.* | : | |

Plaintiff Melvin Gross ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against Defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Navient Corporation ("Navient" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial

evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.        This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired Navient securities between February 25, 2016 through October 4, 2017, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.        Navient Corporation provides asset management and business processing services to education, health care, and government clients at the federal, state, and local levels in the United States.

3.        Founded in 1973, the Company is headquartered in Wilmington, Delaware. Navient's stock trades on the NASDAQ Global Select Market ("NASDAQ") under the ticker symbol "NAVI."

4.        Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the Company engaged in deceptive practices to facilitate the origination of subprime loans; (ii) the Company committed unfair and deceptive acts by steering student borrowers into payment plans that postponed bills, allowing interest to accumulate, rather than helping them enroll in income-driven repayment plans; and (iii) as a result of the foregoing, Navient's public statements were materially false and misleading at all relevant times.

5.      On October 5, 2017, Pennsylvania's Attorney General filed a lawsuit against Navient and its subsidiary Navient Solutions, LLC, alleging "widespread abuses" in Navient's student loan origination and servicing segments and deceptive lending practices.  Among other abuses, the lawsuit alleges that Navient marketed predatory loans and steered student borrowers into payment plans that postponed bills, allowing interest to accumulate, rather than helping them enroll in income-driven repayment plans.

6.      On this news, Navient's share price fell $2.10, or 14.25%, to close at $12.61 on October 5, 2017.

7.      On October 10, 2017, *Bloomberg* published an article entitled "Navient Subject of AFL-CIO Call for Insider Trading Probe," disclosing that the American Federation of Labor and Congress of Industrial Organizations ("AFL-CIO"), the nation's largest labor federation, called for the SEC to "examine the trading in Navient's common stock on August 31" for possible insider trading.

8.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

9.      The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

10.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and Section 27 of the Exchange Act.

11.     Venue is proper in this Judicial District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b). Navient conducts business within this Judicial District.

12.     In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

13.     Plaintiff is a citizen of Nassau County, New York.  As set forth in the attached Certification, he acquired Navient securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

14.     Defendant Navient is incorporated in Delaware, with principal executive offices at 123 Justison Street, Suite 300, Wilmington, Delaware 19801.  Navient's shares trade on the NASDAQ under the ticker symbol "NAVI."

15.     Defendant John F. Remondi ("Remondi") has served as the Company's Chief Executive Officer ("CEO"), President and Director since May 2014.

16.     Defendant Somsak Chivavibul ("Chivavibul") served as the Company's Chief Financial Officer ("CFO") from May 2014 until March 27, 2017.  Chivavibul currently serves as the Company's Chief Decision Management Officer.

17.     Defendant Christian M. Lown ("Lown") has served as the Company's CFO since March 27, 2017.

18.     The Defendants referenced above in ¶¶ 15-17 are sometimes referred to herein as the "Individual Defendants."

19.     The Company and the Individual Defendants are referred to herein, collectively, as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

20.     Navient Corporation provides asset management and business processing services to education, health care, and government clients at the federal, state, and local levels in the United States.

### Materially False and Misleading Statements Issued During the Class Period

21.     The Class Period begins on February 25, 2016, when Navient filed an annual report on Form 10-K with the SEC, announcing the Company's financial and operating results for the quarter and fiscal year ended December 31, 2015 (the "2015 10-K").

22.     In the 2015 10-K, the Company stated in relevant part:

***Commitment to compliance and customer centricity.*** Navient fosters a robust compliance culture driven by a "customer first" approach. We invest in rigorous training programs, internal and external auditing, escalated service tracking and analysis, and customer research to enhance our compliance and customer service.

23.     The 2015 10-K contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Remondi and Chivavibul, stating that the financial information contained in the 2016 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

24.     On February 24, 2017, Navient filed an annual report on Form 10-K with the SEC, announcing the Company's financial and operating results for the quarter and fiscal year ended December 31, 2016 (the "2016 10-K").  For the quarter, Navient reported net income of $145million, or $0.48 per diluted share, on revenue of $378 million, compared to net income of $283 million, or $0.78 per diluted share, on revenue of $536 million for the same period in the

prior year.  For fiscal year 2016, Navient reported net income of $681 million, or $2.12 per diluted share, on revenue of $1.7 billion, compared to net income of $984 million, or $2.58 per diluted share, on revenue of $2.22 billion for fiscal year 2015.

25.     In the 2016 10-K, the Company stated, in relevant part:

***Commitment to compliance and customer centricity***. Navient fosters a robust compliance culture driven by a "customer first" approach. We invest in rigorous training programs, internal and external auditing, escalated service tracking and analysis, and customer research to enhance our compliance and customer service.

\*\*\*

In addition, copies of our Board Governance Guidelines, Code of Business Conduct (which includes the code of ethics applicable to our Principal Executive Officer, Principal Financial Officer and Principal Accounting Officer) and the governing charters for each committee of our Board of Directors are available free of charge on our website at *www.navient.com/about/investors/corp_governance*, as well as in print to any stockholder upon request. We intend to disclose any amendments to or waivers from our Code of Business Conduct (to the extent applicable to our Principal Executive Officer or Principal Financial Officer) by posting such information on our website.

26.     In Navient's Code of Business Conduct, the Company stated, in part:

At Navient, we understand that our good name begins and ends with our individual and collective integrity. Our adherence to high ethical standards while providing industry-leading services to help our customers succeed has served us well. We must ensure that our unwavering approach to conducting business with integrity is understood by our employees and customers.

Our Code of Business Conduct provides a broad set of clear principles and expectations for Navient employees, officers and directors. Each of us is responsible for abiding by and enforcing the Code, including reporting any questionable activities using the resources provided in the Code.

\*\*\*

**FAIR DEALING**

Employees should deal fairly with the company's customers, suppliers, competitors and employees. ***No one should take unfair advantage of another individual or company through manipulation, concealment, abuse of confidential, proprietary or privileged information or misrepresentation of material facts.***

*** 

**INSIDER TRADING**

Insider trading means trading in securities while possessing material inside information not made publicly available to the investor community. ***Insider trading is a very serious matter: it is not only unethical but illegal.*** Federal securities laws provide severe civil and criminal penalties for engaging in insider trading.

(Emphases added.)

27.     The 2016 10-K contained signed certifications pursuant to SOX by Defendants Remondi and Chivavibul, stating that the financial information contained in the 2016 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

28.     On April 27, 2017, Navient filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended March 31, 2017 (the "Q1 2017 10-Q").  For the quarter, Navient reported net income of $88 million, or $0.30 per diluted share, on revenue of $340 million, compared to net income of $181 million, or $0.53 per diluted share, on revenue of $486 million for the same period in the prior year.

29.     In the Q1 2017 10-Q, the Company stated, in relevant part:

***Commitment to compliance and customer centricity***. Navient fosters a robust compliance culture driven by a "customer first" approach. We invest in rigorous training programs, internal and external auditing, escalated service tracking and analysis, and customer research to enhance our compliance and customer service.

30.     The Q1 2017 10-Q contained signed certifications pursuant to SOX by Defendants Remondi and Lown, stating that the financial information contained in the Q1 2017 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

31.    On August 1, 2017, Navient filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended June 30, 2017 (the "Q2 2017 10-Q").  For the quarter, Navient reported net income of $112 million, or $0.39 per diluted share, on revenue of $351 million, compared to net income of $125 million, or $0.38 per diluted share, on revenue of $429 million for the same period in the prior year.

32.    In the Q2 2017 10-Q, the Company stated, in relevant part:

> ***Commitment to compliance and customer centricity***. Navient fosters a robust compliance culture driven by a "customer first" approach. We invest in rigorous training programs, quality assurance, reviews and audits, escalated service tracking and analysis, and customer research to enhance our compliance and customer service.

33.    The Q2 2017 10-Q contained signed certifications pursuant to SOX by Defendants Remondi and Lown, stating that the financial information contained in the Q2 2017 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

34.    The statements referenced in ¶¶ 21-33 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the Company engaged in deceptive practices to facilitate the origination of subprime loans; (ii) the Company committed unfair and deceptive acts by steering student borrowers into payment plans that postponed bills, allowing interest to accumulate, rather than helping them enroll in income-driven repayment plans; and (iii) as a result of the foregoing, Navient's public statements were materially false and misleading at all relevant times.

**The Truth Begins to Emerge**

35.    On October 5, 2017, Pennsylvania's Attorney General filed a lawsuit against

Navient and its subsidiary Navient Solutions, LLC, alleging "widespread abuses" in Navient's

student loan origination and servicing segments and deceptive lending practices.  Among other

abuses, the lawsuit alleges that Navient marketed predatory loans and steered student borrowers

into payment plans that postponed bills, allowing interest to accumulate, rather than helping

them enroll in income-driven repayment plans.  Specifically, the lawsuit alleges that:

> As explained further below, Defendants unfairly and deceptively engaged in a
> series of acts and practices to facilitate originating these subprime loans to many
> borrowers who had a high likelihood of defaulting.
>
> ***
>
> Nevertheless, since at least July 2011, despite publicly assuring borrowers that it
> will help them identify and enroll in an appropriate, affordable repayment plan,
> Defendants have routinely disregarded that commitment and instead steered
> borrowers experiencing long-term financial hardship into forbearance.

36.     On this news, Navient's share price fell $2.10, or 14.25%, to close at $12.61 on

October 5, 2017.

37.     On October 10, 2017, *Bloomberg* published an article entitled "Navient Subject of

AFL-CIO Call for Insider Trading Probe," disclosing that the American Federation of Labor and

Congress of Industrial Organizations ("AFL-CIO"), the nation's largest labor federation, called

for the SEC to "examine the trading in Navient's common stock on August 31" for possible

insider trading.

38.     As a result of Defendants' wrongful acts and omissions, and the precipitous

decline in the market value of the Company's securities, Plaintiff and other Class members have

suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

39.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil

Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or

otherwise acquired Navient securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which Defendants have or had a controlling interest, and any judicial officers who handle this matter and their immediate families.

40.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Navient securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Navient or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

41.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

42.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

43.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Navient;

- whether the Individual Defendants caused Navient to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Navient securities during the Class Period were artificially inflated because of Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

44.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

45.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Navient  securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Navient securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

46.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

47.     Alternatively, Plaintiff and the members or the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## <u>COUNT I</u>

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

48.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

49.     This Count is asserted against all Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

50.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to

defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Navient securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Navient securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

51.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Navient securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Navient's finances and business prospects.

52.     By virtue of their positions at Navient, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Such acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

53.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of Navient, the Individual Defendants had knowledge of the details of Navient's internal affairs.

54.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Navient.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Navient's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Navient securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Navient's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Navient securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

55.     During the Class Period, Navient securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Navient securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or

otherwise acquired the securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Navient securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Navient securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

56.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

57.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)**

58.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

59.     During the Class Period, the Individual Defendants participated in the operation and management of Navient, and conducted and participated, directly and indirectly, in the conduct of Navient's business affairs.  Because of their senior positions, they knew the adverse non-public information about Navient's misstatement of income and expenses and false financial statements.

60.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Navient's financial condition and results of operations, and to correct promptly any public statements issued by Navient which had become materially false or misleading.

61.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Navient disseminated in the marketplace during the Class Period concerning Navient's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Navient to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Navient within the meaning of Section 20(a) of the Exchange Act.   In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Navient securities.

62.     Each of the Individual Defendants, therefore, acted as a controlling person of Navient.  By reason of their senior management positions and/or being directors of Navient, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Navient to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Navient and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

63.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Navient.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.      Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.      Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.


Dated: November 3, 2017                    **LITE DEPALMA GREENBERG, LLC**

                                           */s/ Bruce D. Greenberg*
                                           Bruce D. Greenberg
                                           570 Broad Street, Suite 1201
                                           Newark, New Jersey 07102
                                           Telephone: (973) 623-3000
                                           Facsimile: (973) 623-0858
                                           Email: bgreenberg@litedepalma.com

                                           **POMERANTZ LLP**
                                           Jeremy A. Lieberman
                                           J. Alexander Hood II
                                           Hui M. Chang
                                           600 Third Avenue, 20th Floor
                                           New York, New York 10016
                                           Telephone:  (212) 661-1100
                                           Facsimile:  (212) 661-8665
                                           Email: jalieberman@pomlaw.com
                                                   ahood@pomlaw.com
                                                   hchang@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:  (312) 377-1184
Email:  pdahlstrom@pomlaw.com

*Attorneys for Plaintiff*

## LOCAL CIVIL RULE 11.2 CERTIFICATION

Pursuant to Local Civil Rule 11.2, I hereby certify that the matter in controversy is not related to any other action, pending arbitration or administrative proceeding currently pending in any court.

I hereby certify that the following statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.


Dated: November 3, 2017              **LITE DEPALMA GREENBERG, LLC**

*/s/ Bruce D. Greenberg*
Bruce D. Greenberg
570 Broad Street, Suite 1201
Newark, New Jersey 07102
Telephone: (973) 623-3000
Facsimile: (973) 623-0858
Email: bgreenberg@litedepalma.com

**POMERANTZ LLP**
Jeremy A. Lieberman
J. Alexander Hood II
Hui M. Chang
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
Email: jalieberman@pomlaw.com
        ahood@pomlaw.com
        hchang@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:  (312) 377-1184
Email:  pdahlstrom@pomlaw.com

*Attorneys for Plaintiff*